IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES E. VALLEY,

        Plaintiff,                  No. CIV S-05-0310 MCE KJM P

    vs.

DIRECTOR OF PRISONS, et al.,

        Defendants.            <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983.

        Defendants Woodford and Kernan have filed a motion to dismiss on three grounds: (1) plaintiff failed to exhaust administrative remedies, (2) the complaint does not state a claim for relief, and (3) the defendants are entitled to qualified immunity.

/////
/////
/////
/////
/////
/////

1

I. <u>Failure To Exhaust</u>

The Prison Litigation Reform Act (PLRA) provides that

> [n]o action shall be brought with respect to prison conditions under section 1983 with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

28 U.S.C § 1997e(a). "Conditions of confinement" subject to exhaustion have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2); <u>Smith v. Zachary</u>, 255 F.3d 446, 449 (7th Cir. 2001); <u>see also</u> <u>Lawrence v. Goord</u>, 304 F.3d 198, 200 (2d Cir. 2002). Exhaustion of such remedies is mandatory. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).

A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir.), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u>. <u>Alameida v. Wyatt</u>, 540 U.S. 810 (2003). In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. <u>Id</u>. at 1119-20. Defendant bears the burden of proving plaintiff's failure to exhaust. <u>Id</u>. at 1119.

The California prison grievance procedure has several layers, culminating in the third, or Director's, level review. Cal. Code Regs. tit. 15, §§ 3084.1- 3084.5. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims, unless a step of the grievance process is not available to plaintiff or a regulatory exception excuses exhaustion. <u>See</u> Cal. Code Regs. tit. 15, § 3084.7 (exceptions to normal appeal process). In addition, to satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff later includes in the complaint. <u>Porter v. Nussle</u>, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case"); <u>Brown v. Sikes</u>, 212 F.3d 1205, 1209 (11th Cir. 2000) (1997e(a)

2

requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process).

In this case, plaintiff's complaint alleges that he broke a finger on April 9, 2004. Despite the obvious swelling, his numerous requests for medical care and an X-ray showing the damage, he did not receive adequate medical care for months, in part because two different medical review committees were slow to approve a doctor's authorization for surgery. Compl. at 1-4.[1] Plaintiff alleges that he was in pain for months, until he finally received the surgery on December 9, 2004. Id.

Defendants argue that plaintiff did not exhaust his administrative remedies because he never pursued a grievance about the denial of medical care through the Director's Level. In support, they have submitted the Declaration of Irish O'Brian, the appeals coordinator at California State Prison, Sacramento (CSP-Sac), who avers that she has searched records of plaintiff's grievances and has found one regarding medical care, submitted on August 26, 2004. O'Brian Decl. ¶ 6. In this grievance, given log number 04-01696, plaintiff asked that the grievance be treated as an emergency, that it not be reviewed by anyone at CSP-Sac, and that "medical be ordered to complete my treatment," which he described as the surgery prescribed by the outside doctor. O'Brian Decl., Ex. B (grievance). This grievance was partially granted at the first level:

> **APPEAL RESPONSE**: It should be noted that the instant appeal was reviewed and deemed not to meet emergent criteria.
>
> You continue to have pain in your right hand when you try to use it due to your contractures at the right third proximal interphalangeal (PIP) joint. Dr. Allen, the orthopedic hand specialist at UC Davis, wants to do surgery, which would possibly give 70 degrees of motion at the joint.
>
> The Consult Desk was contacted, and the approval for surgery is currently being handled at the headquarters level.

---

[1] Page references are to the narrative pages attached to the complaint.

3

     **APPEAL RESPONSE**: For the reasons cited above, your appeal
    is **PARTIALLY GRANTED.**

O'Brian Decl. ¶¶ 6-7 & Ex. C (first level response).  There is no record that plaintiff pursued the matter further internally.  O'Brian Decl. ¶ 7; Declaration of N. Grannis (Grannis Decl.) ¶ 10.

    Plaintiff argues, in essence, that his attempts to secure a Director's Level determination were frustrated by O'Brian, who refused to log his grievances, and by Grannis, who returned a grievance to him because he had not secured a second level decision.  Opp'n at 1-3; Compl., Ex. J (grievance form, not assigned a number, with letter from N. Grannis returning grievance).

    Whether or not O'Brian's and Grannis's alleged interference with plaintiff's grievances would satisfy or excuse the exhaustion requirement, the decision on log number 04-01696 exhausted plaintiff's administrative remedies as explained below.

    In <u>Booth</u>, the Supreme Court recognized that for a remedy to be "available," there must be the "possibility of some relief. . . ." 532 U.S. at 738.  Based on this definition, several courts have found an inmate to have exhausted all available remedies when his grievance was granted before it reached the final level of review.  For example, in <u>Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1186 (10th Cir. 2004), the plaintiff filed a pre-grievance resolution form complaining that the lack of a mat in the shower caused him to slip and injure himself; in response, prison officials put a mat in the shower.  He ultimately filed a civil rights action, raising this claim among others.  Defendants moved to dismiss, alleging that plaintiff had not exhausted his remedies because he had not filed a grievance about the unsafe conditions.

/////

/////

/////

/////

/////

The Tenth Circuit disagreed. Relying on Booth, the court held:

> Once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted. Prisoners are not required to file additional complaints or appeal favorable decisions in such cases. When there is no possibility of any further relief, the prisoner's duty to exhaust available administrative remedies is complete.

Id. at 1187.[2]

In Abney v. McGinnis, 380 F.3d 663, 665-66 (2d Cir. 2004), plaintiff filed several grievances regarding orthopedic footwear. Several times, the grievance committee accepted his grievances and scheduled appointments with the podiatry department or directed that various footwear be provided for him. Over the course of several years, plaintiff received ill-fitting shoes and arch supports. He eventually filed a civil rights action, complaining about the problems in securing the proper footwear. The defendants moved to dismiss, alleging plaintiff had not exhausted his administrative remedies, because he had not appealed the resolution of his grievances. The Second Circuit disagreed, finding it impractical to require prisoners to anticipate that the resolution of the grievance would not be honored in order to meet the four-day appeal deadline applicable in that case. It continued:

> Where, as here, prison regulations do not provide a viable mechanism for appealing implementation failures, prisoners in Abney's situation have fully exhausted their available remedies. A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion.

Id. at 669; compare Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002) (finding prisoner who had been granted relief in a grievance nevertheless had failed to exhaust; regulations provided a separate appeal system for implementation failures, which he had not utilized).

//////

---

[2] The court ultimately found that plaintiff had not exhausted his medical care claim and upheld the dismissal of the action, on a theory of complete exhaustion.

Finally, in <u>Brady v. Attygala</u>, 196 F.Supp.2d 1016 (C.D. Cal. 2002), plaintiff filed a grievance, asking that he be evaluated by an outside eye specialist. During the pendency of the appeal, he was so evaluated. Accordingly, the second level of appeal was "**GRANTED** in that you have been seen by a 'specialist.'" Plaintiff did not seek a Director's Level review.

When plaintiff in <u>Brady</u> filed a civil rights action, defendants moved to dismiss, arguing plaintiff had not exhausted administrative remedies. The district court disagreed:

> When Brady's grievance was "granted" at the second level of review, there was little else he could seek or expect from the prison administrative process; he had "won" his appeal and had been granted all the relief he sought in his grievance. Nowhere have the defendants articulated what other types of relief were still available from the administrative process for Brady to pursue after his appeal was granted. Nor does it appear that any in fact do exist. California's grievance process only requires an inmate to appeal to the director if their [*sic*] "appeal [is] not resolved at [the] second level. . . . Because Brady's appeal was granted at the second level, the Department of Corrections' own regulations would appear to indicate that further exhaustion on his part was not required.

<u>Id</u>. at 1021-22 (citation omitted); <u>see also Clement v. California Department of Corrections</u>, 220 F.Supp.2d 1098 (N.D. Cal. 2002) (when plaintiff's two grievances were resolved in his favor while they were pending, he had adequately exhausted even though he had not pursued a third level appeal).

Plaintiff's appeal was granted at the first level because the approval for surgery was being "handled" at the "administrative level," suggesting that the approval had been received or was a foregone conclusion. The approval resulted in plaintiff's receiving surgery within just over two months. Defendants have not shown there was a separate appeals process available for implementation failures or what other relief with respect to the medical portion of the grievance plaintiff could have obtained at the Director's Level. They have not borne their burden of proving plaintiff's failure to exhaust the claim on which he is proceeding in this court.

/////

/////

II. Failure To State A Claim

Defendants also argue that plaintiff does not state a claim against them because, as the warden of CSP-Sac and (former) Director of the California Department of Corrections and Rehabilitation, they had no personal role in the delay of plaintiff's surgery and no ability to exercise any medical judgment on plaintiff's behalf. Indeed, they suggest that the medical personnel of the correctional facilities have sole responsibility for medical care. Mot. to Dismiss (MTD) at 8.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

In his complaint, plaintiff alleges that he sent a copy of at least one grievance, complaining of his continuing pain and his need for surgery, directly to defendant Kernan's office. Compl. at 2. In addition, plaintiff claims to have attempted to give notice to defendant Woodford by sending a grievance directly to the Director's Level. Id. He also alleges that both are responsible for establishing and enforcing a procedure for small bone fractures that is akin to "torture [—] it involves unnecessary and unrestricted infliction of pain." Compl. at 6.

Evaluating his claims in the light most favorable to plaintiff, as required, this court cannot say he fails to state a claim. An inmate's communications to a supervisor may put a supervisor on notice of a risk to his health, which in turn might obligate that supervisor to act.

See Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) ("prison administrators . . . are liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help"); Vance v. Peter, 97 F.3d 987, 993 (7th Cir. 1996) (a prisoner's letters to administrators may give notice of risk to health, triggering the duty to act). Moreover, to the extent that the supervisors enforced a policy that resulted in an eight month delay in plaintiff's surgery, they may be liable for this reason. McKenna v. Wright, 386 F.3d 432, 437 (2d Cir. 2004); see Cal. Penal Code §§ 2079 (supervisory and enforcement duties of wardens) & 5054 (director responsible for care and custody of prisoners). Plaintiff's complaint states a claim against these two defendants.

IV. Qualified Immunity

In a very brief argument, defendants suggest they are entitled to qualified immunity because they "were not qualified nor medically authorized to effectuate Plaintiff's request for medical treatment." MTD at 9.

In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court must answer two questions. The first is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? Saucier v. Katz, 533 U.S. 194, 201 (2001). A negative answer ends the analysis, with qualified immunity protecting defendant from liability. Id. If a constitutional violation occurred, a court must further inquire "whether the right was clearly established." Id. "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202. The reasonableness of a defendant's conduct is judged "against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

As noted above, plaintiff alleges he gave both defendants notice that surgery his treating physician thought to be necessary was delayed, causing him great pain and ultimate deformity. Compl. at 5, 7. This states a claim for a violation of his Eighth Amendment rights. Jett, 439 F.3d at 1098 (allegations that plaintiff put administrators on notice of need for proper

8

1  treatment of hand states a claim).  Moreover, in 2004, during the time the defendants allegedly
2  failed to act, an inmate's right to adequate medical care without harmful delays was clearly
3  established.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976) ("Regardless of how evidenced,
4  deliberate indifference to a prisoner's serious illness or injury states a cause of action under
5  § 1983.").  At this stage of the litigation, defendants have not shown they are entitled to qualified
6  immunity.

7  　　　　　Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion to
8  dismiss be denied.

9  　　　　　These findings and recommendations are submitted to the United States District
10  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
11  days after being served with these findings and recommendations, any party may file written
12  objections with the court and serve a copy on all parties.  Such a document should be captioned
13  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
14  shall be served and filed within ten days after service of the objections.  The parties are advised
15  that failure to file objections within the specified time may waive the right to appeal the District
16  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
17  DATED:   July 13, 2006.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

2/vall0310.57