1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLES E. VALLEY,

11            Plaintiff,                        No. CIV S-05-0310 MCE KJM P

12        vs.

13   DIRECTOR OF PRISONS, et al.,

14            Defendants.                       FINDINGS & RECOMMENDATIONS

15   _____/

16            Plaintiff is a state prison inmate proceeding pro se with a civil rights action under

17   42 U.S.C. § 1983, alleging that his Eighth Amendment rights were violated as a result of the

18   medical care he received for a broken bone in his hand.  Plaintiff and defendants all have moved

19   for summary judgment.

20   /////

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

1

I.  Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

1   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

5   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

6   1436 (9th Cir. 1987).

7           In the endeavor to establish the existence of a factual dispute, the opposing party

8   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

9   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

10  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

11  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

12  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

13  committee's note on 1963 amendments).

14          In resolving the summary judgment motion, the court examines the pleadings,

15  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

17  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

18  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

19  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

20  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

21  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

22  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

24  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

26  /////

1    On April 24, 2006, the court advised plaintiff of the requirements for opposing a

2  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3  F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v.

4  Eikenberry, 849 F.2d 409 (9th Cir. 1988).

5  II.  Facts

6        A.  The Injury And Its Repair

7    On April 9, 2004, plaintiff injured his right hand in a fight with another inmate.

8  Plaintiff's Undisputed Fact (PUF) 1;[1] Defendants' Statement of Undisputed Facts (DUF) 1.[2]

9    X-rays of plaintiff's right hand showed a fracture of the middle phalanx.

10  Defendant's Motion For Summary Judgment (DMSJ), Ex. A at 2; Plaintiff's Motion For

11  Summary Judgment (PMSJ), Exs. A-1 (CDCR Physician's Progress Notes) & B-2 (report from

12  Advanced Imaging Center, Roseville).[3]  Shortly thereafter, Dr. Penner requested that plaintiff be

13  seen by an orthopedic surgeon for a consultation; he noted that the request was urgent and

14

15    [1]  Plaintiff's statement of undisputed facts is incorporated in his motion for summary
   judgment, filed August 31, 2006 and renewed on November 13, 2007 in response to this court's
16  order of September 27, 2007.  The statement is signed under the penalty of perjury.

17    [2]  For this fact, defendants rely on plaintiff's complaint, which is not signed under penalty
   of perjury.  However, the assertions in the complaint are, for the most part, echoed in plaintiff's
18  statement of undisputed facts.

19    [3]  Both parties have submitted a copy of a memo from the Advanced Imaging Center of
   Roseville.  Although defendant has provided the declaration of the custodian of medical records
20  at California State Prison-Sacramento (CSP-Sac) as a means of authenticating records from
   plaintiff's medical file, it does not appear that this declarant properly can authenticate a record
21  not created in the California Department of Corrections and Rehabilitation (CDCR).  See United
   States v. Ray, 930 F.2d 1368, 1370 (9th Cir. 1990) ("For the records to be admissible, the
22  following foundational facts must be established through the custodian of the records or another
   qualified witness: (1) the records must have been made or transmitted by a person with
23  knowledge at or near the time of the incident recorded; and (2) the record must have been kept in
   the course of a regularly conducted business activity.").  The court accepts the record, however,
24  because neither party disputes its accuracy or admissibility.
        Plaintiff has not authenticated the pages of medical records he has attached to his motion.
25  Defendants have not objected to these portions of the records, however, and they do appear to be
   plaintiff's records.  The court will rely on them in resolving the pending motions.  Fed. R. Evid.
26  901(a) & (b)(4).

1   plaintiff should be seen within two weeks.  DMSJ, Ex. A at 3; PMSJ, Ex. D-4.  In support of this

2   request, Dr. Penner submitted a form, attesting that treatment for plaintiff's broken finger met

3   CDC standards for medical necessity.  PMSJ, Ex. C-3.

4          A follow up x-ray was ordered on May 7, 2004, and was taken on June 2, 2004.

5   This x-ray showed no change in the alignment of the fracture.  DMSJ, Ex. A at 4-6; PMSJ, Exs.

6   E-5 & F-6.

7          On July 1, 2004, Dr. Robert Allen, an orthopedic surgeon, examined plaintiff and

8   recommended surgical repair of the fracture.  DMSJ, Ex. A at 7-8[4]; PMSJ, Ex. G-7.  Plaintiff's

9   finger was both swollen and painful during the examination.  Plaintiff's Opposition To Motion

10  For Summary Judgment (Opp'n), Ex. D, Declaration of Dr. Robert Allen (Allen Decl.) ¶¶ 3 & 4.[5]

11  On July 26, 2004, Dr. Penner submitted a request to have the surgery approved.  DMSJ, Ex. A at

12  8; PMSJ, Ex. H-8.

13         On July 27, 2004, plaintiff submitted a health care request form, asking whether

14  surgery had been scheduled and complaining of pain.  PMSJ, Ex. I-9.  The nurse who examined

15  him continued plaintiff on Motrin for the pain and instructed him to wrap the finger in an Ace

16  bandage at night to protect it.  Nurse Jones also faxed a note to the consult desk to check on the

17  progress in scheduling surgery.  Id.

18         On August 26, 2004, plaintiff submitted a grievance, assigned log number

19  H-04-01696, in which he complained of the delay in receiving approval for surgery to repair his

20  fractured finger and alleviate the pain.  Compl., Ex. J.  Dr. Penner responded that "the approval

21  for surgery is currently being handled at the headquarters level."  Id.

22  /////

23

24         [4] See note 3 above.

25         [5] The Allen declaration is written in the form of interrogatories, but plaintiff has called it
    an "affidavit–deposition hand written questions from plaintiff to Dr. Robert Allen M.D. . . ."  As
26  it is signed under penalty of perjury and is not objected to, the court will treat it as a declaration.

1      Plaintiff submitted additional health care request forms on September 2 and

2  October 26, 2004, complaining of pain and inquiring about the surgery.  PMSJ, Exs. J-10 and K-

3  11.

4      Although surgery was approved on September 7, 2004, it was not conducted until

5  December 10, 2004.  DMSJ, Ex. A at 9; PMSJ, Ex. L-12.  At follow-up appointments, the

6  surgeon noted that plaintiff was regaining range of motion and was no longer in pain.  PMSJ,

7  Exs. N-14 & O-15.

8      Dr. Allen, the orthopedic surgeon who operated on plaintiff's hand, says that

9  "generally earlier treatment yields better results."  Allen Decl. ¶ 8.

10     B.  The Defendants' Involvement In The Delay Of Treatment

11      On June 7, 2004, plaintiff wrote a grievance addressed directly to the warden,

12  complaining that the medical department "has taken it upon itself to do nothing on matters of

13  broken fingers. . . ."  Complaint (Compl.), Ex. J; Opposition to DMSJ (Opp'n), Ex. A, Second

14  Declaration Of Charles Valley (Valley Decl. II).[6]  Kernan does not remember having contact with

15  plaintiff during May or June 2004; he says that "if an inmate grievance regarding medical issues

16  is sent by an inmate to the Warden, the Warden's secretary would redirect the grievance to the

17  appropriate medical personnel for a response."  DMSJ, Ex. B No. 5.  He acknowledges, though,

18  that an inmate could send a letter directly to the warden's office by using a "U-Save-Em"

19  envelope.  DMSJ, Ex. B No. 4.

20  /////

21

22      [6] Plaintiff also argues that defendant Kernan was aware that medical staff members were
    providing inmates with braces for small bone breaks, but ordered the practice discontinued
23  because inmates were making weapons with the braces.  Opp'n at 4.  He learned this, he avers, in
    the conversation with Dr. Penner.  Opp'n, Valley Decl. III.  He avers that he wrote to defendant
24  Kernan about this policy in May 2004.  Opp'n, Valley Decl. II.  He did not include these
    allegations in the complaint, which described his cause of action as one for medical delay that
25  caused pain and disfigurement.  The court will not consider this attempt to broaden the claim at
    the summary judgment stage when it appears plaintiff had this information at the time he filed
26  the complaint.

1    In addition, plaintiff contends he wrote to Jeanne Woodford, who was then the

2   Director of CDC, complaining of the delay in receiving treatment.  Opp'n, First Declaration of

3   Charles Valley (Valley Decl. I).[7]  Woodford has not submitted a declaration or other evidence

4   denying receipt of plaintiff's communications.[8]

5    Finally, plaintiff avers that sometime after his injury, he visited his treating

6   physician, Dr. Penner, who assured plaintiff he would prepare the documents necessary to secure

7   approval for plaintiff's surgery.  Opp'n, Third Declaration of Charles Valley (Valley Decl. III).

8   Dr. Penner told plaintiff, however, that the "medical health care review committee had sent

9   orders to prison doctors and prison review committee's [sic] not to put in medical providers [sic]

10  request for small bone breaks because the success rate on surgery was small. . . ."  Id.[9]

11    Plaintiff has supported his third declaration with materials he received in

12  discovery: copies of grievances submitted by other CSP-Sac inmates complaining of the

13  treatment they had received (or not) for small bone breaks.  Opp'n, Ex. E.  For example, in Log

14  No. 04-00402, the Director's Level response noted the inmate was scheduled for surgery in

15  August 2004 to repair the finger fracture that occurred in December 2003.  In Log No. 04-00727,

16  the inmate complained about the delay in receiving surgery for his fractured surgery and the pain

17  he was suffering as a result.  In Log No. 04-1546, the inmate's grievance about his care was

18  denied at the Director's Level because the fracture had healed on its own, which had prompted

19  the Medical Authorization Review committee to deny a consultation with an orthopedic

20

21         [7]  In his complaint, plaintiff speculates that Woodford may not have received the letter
    because he received no response.  Compl., Continuation page at 4.
22

23         [8]  It appears Woodford relies solely on the speculation in plaintiff's complaint.  DMSJ at
    5 & n.1.  See note 7 above.

24         [9]  Although this conversation with Dr. Penner is hearsay, defendants have not objected to
    plaintiff's declaration or otherwise moved to strike it.  Any objection is thus waived, particularly
25  in light of the Ninth Circuit's recognition that courts are to be more lenient with the affidavits of
    a party opposing summary judgment.  Pfingston v. Ronan Engineering Co., 284 F.3d 999, 1003
26  (9th Cir. 2002); Scharf v. United States Attorney General, 597 F.2d 1240, 1243 (9th Cir. 1979).

1    specialist; the resolution noted that the inmate still complained of pain and should visit the

2    institution's doctors for pain management.  In the grievance associated with this resolution, the

3    inmate notes that "pain killers will not fix my broken hand."  In Log No. 05-949, the Director's

4    Level decision observes that the injury to plaintiff's hand, suffered in February 2005, was not

5    surgically repaired until August 2005 and that part of the delay was caused by U.C. Davis

6    Medical Center's rescheduling the surgery.  In Log No. 04-1329, the inmate complained that his

7    finger, broken in April 2004, was not healing properly; the first level response to the appeal noted

8    that the inmate had seen an orthopedist in July 2004 and the "results are pending."  In Log No.

9    05-00900, the inmate complained he was denied surgery even though Dr. Allen had told him

10   hand surgery was necessary; the second level response notes the request would be resubmitted to

11   the Medical Authorization Review Committee.  In Log No. 05-804, the inmate sought treatment

12   for a swollen, deformed thumb; the second level reviewer referred the matter to the Chief

13   Medical Officer of SVSP, where the inmate had been transferred.  In Log No. 05-1713, the

14   inmate contended he was being given the run around when he asked to see a doctor for follow-up

15   care and surgery for a broken wrist; at the first level, the reviewer granted the grievance because

16   the inmate had been scheduled to see a doctor.[10]

17          Defendant Kernan disavows knowledge of a policy directing medical staff to not

18   request surgery for small bone breaks:  "Defendant is unaware of any policy regarding how to

19   treat certain injuries or illnesses.  Defendant is informed and believes that treating physicians and

20   medical staff would determine the most appropriate course of treatment for any particular

21   injury."  DMSJ, Ex. B No. 7.

22          Defendant Kanan does not address any policy and does not recall whether she

23   acted as chair of the Health Care Review Committee from April until December 2004 or whether

24   she delegated this duty to someone else.  DMSJ, Ex. C No. 2.

25   _____

26          [10]  The final grievance in this group, Log No. 05-02133, complains more about Dr.
     Allen's performance than of the prison's initial response to his broken finger.

1  III.  Analysis

2           In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that

3  inadequate medical care did not constitute cruel and unusual punishment cognizable under

4  section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious

5  medical needs."

6           In the Ninth Circuit, the test for deliberate indifference consists of
           two parts. First, the plaintiff must show a serious medical need by
7           demonstrating that failure to treat a prisoner's condition could
           result in further significant injury or the 'unnecessary and wanton
8           infliction of pain.  Second, the plaintiff must show the defendant's
           response to the need was deliberately indifferent.  This second
9           prong-defendant's response to the need was deliberately
           indifferent-is satisfied by showing (a) a purposeful act or failure to
10          respond to a prisoner's pain or possible medical need and (b) harm
           caused by the indifference. Indifference may appear when prison
11          officials deny, delay or intentionally interfere with medical
           treatment, or it may be shown by the way in which prison
12          physicians provide medical care.

13  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); see

14  also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992), overruled in part on other grounds,

15  WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

16          There is no Eighth Amendment violation if any delay in treatment is not harmful.

17  Shapely v. Nevada Bd. Of State Prison Com'rs., 766 F.2d 404, 407 (9th Cir. 1985).  However,

18  unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth

19  Amendment violation from delay in providing medical care.  McGuckin, 974 F.2d at 1062.

20          A supervisor may be liable for an Eighth Amendment violation if he or she was

21  made aware of the problem and failed to act or if he or she promulgated or enforced a policy

22  under which unconstitutional practices occurred.  Jett v. Penner, 439 F.3d at 1098; Black v.

23  Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).

24          Defendants appear to concede that plaintiff's broken finger and the resulting pain

25  were serious medical needs.  They argue, however, that they were neither involved in his care,

26  nor did they promulgate or enforce an unconstitutional policy.

9

1    Defendant Kernan is entitled to summary judgment.  Although plaintiff avers he

2    addressed a grievance directly to the warden's office, he does not rebut defendant Kernan's

3    assertion that he was not aware of plaintiff's medical problems and would not have become

4    aware of them because his secretary would have routed any medical care grievance to other

5    officials.  Moreover, plaintiff has presented nothing suggesting that defendant Kernan otherwise

6    became aware of plaintiff's particular problem or of a policy regarding surgery for small bone

7    breaks.

8            However, neither plaintiff nor defendants Woodford and Kanan are entitled to

9    summary judgment.  Plaintiff swears he notified defendant Woodford of his problems in securing

10   treatment for his injury; she has presented nothing but argument suggesting she did not receive

11   the letters.  As the Ninth Circuit has instructed, plaintiff "is entitled to an inference at the

12   summary judgment stage" that defendant Woodford received the letter he swore he sent to her.

13   Jett v. Penner, 439 F.3d at 1098.  Nevertheless, plaintiff has not presented enough evidence to

14   support his claim for summary judgment against defendant Woodford, for he does not clearly

15   identify what information he provided to defendant Woodford that would establish as a matter of

16   law that her failure to act constituted deliberate indifference.  Indeed, in one portion of one of his

17   declarations, he suggests he sent her copies of his grievances, while in another, he suggests that

18   these documents were in fact sent to the Inmate Appeals Branch of CDC.  Valley Decl. I.

19           Plaintiff has presented evidence that the Medical Health Care Review Committee

20   had implemented an informal policy to discourage prison doctors from seeking surgical repair for

21   small bone breaks, a policy that led to pain and deformity for plaintiff and other inmates at CSP-

22   Sac.  A reasonable jury could find that defendant Kanan, the chair of the committee, was aware

23   of any such policy, a finding that precludes summary judgment in her favor.  However, because

24   plaintiff has not at this point linked defendant Kanan directly to the policy, he is not entitled to

25   summary judgment on the issue.

26   /////

1    Defendants Woodford and Kanan also argue that they are entitled to qualified

2    immunity.

3    Government officials performing discretionary functions generally are shielded

4    from liability for civil damages insofar as their conduct does not violate clearly established

5    statutory or constitutional rights of which a reasonable person would have known.  Harlow v.

6    Fitzgerald, 457 U.S. 800, 818 (1982).

7    In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a particular

8    sequence of questions to be considered in determining whether qualified immunity exists. The

9    court must consider this threshold question: "Taken in the light most favorable to the party

10   asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

11   right?"  Id. at 201.  If no constitutional right was violated if the facts were as alleged, the inquiry

12   ends and defendants prevail.  Id.  The court has found that taken in the light most favorable to

13   plaintiff, the evidence of defendant Woodford's awareness of plaintiff's medical problems and

14   defendant Kanan's involvement in the policy of denying or delaying treatment for small bone

15   breaks constitutes deliberate indifference.

16    If, however,

17    a violation could be made out on a favorable view of the parties'
      submissions, the next, sequential step is to ask whether the right
18    was clearly established.... "The contours of the right must be
      sufficiently clear that a reasonable official would understand that
19    what he is doing violates that right."... The relevant, dispositive
      inquiry in determining whether a right is clearly established is
20    whether it would be clear to a reasonable officer that his conduct
      was unlawful in the situation he confronted.

21

22   Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  The reasonableness of

23   a defendant's conduct is judged "against the backdrop of the law at the time of the conduct."

24   Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  The defendant should not be subject to liability

25   if the law at that time did not clearly establish that the defendant's actions would violate the

26   Constitution.  Id.  The Supreme Court has emphasized that "the qualified immunity inquiry must

1   be undertaken in light of the specific context of the case." Id. The court must determine whether

2   the contours of the right were sufficiently clear that a reasonable official would understand that

3   what he was doing violated that right. Anderson, 483 U.S. at 640. "Sufficient clarity" for the

4   purposes of the qualified immunity inquiry does not require precedent directly on point; it is

5   sufficient if "unlawfulness is apparent in light of preexisting law. . . ." Devereaux v. Abbey, 263

6   F.3d 1070, 1075 (9th Cir. 2001).

7           Estelle established the general proposition that prison officials may not act with

8   "deliberate indifference to serious medical needs," 429 U.S. at 106, and noted specifically that

9   deliberate indifference might be shown by officials' intentionally "delaying access to medical

10  care." Id. at 104-05. In the Ninth Circuit, as well, the law was clear that a harmful delay in the

11  provision of medical care could constitute deliberate indifference. Hutchinson v. United States,

12  833 F.2d. 390, 394 (9th Cir. 1988). In 2004, a reasonable prison official would have understood

13  that instituting a policy that could delay medical treatment for serious medical needs would be

14  unlawful.

15          Similarly, at the time of plaintiff's attempts to secure surgery for his broken

16  finger, the law was clear that a prison official who failed to act despite an awareness that inaction

17  carried a risk of harm to the inmate violated the Eighth Amendment. Farmer v. Brennan, 511

18  U.S. 825, 837 (1994). A reasonable prison official would have understood that ignoring an

19  inmate's complaints of pain, deformity and delayed medical treament would be unlawful.

20          IT IS HEREBY RECOMMENDED that:

21          1. Plaintiff's motion for summary judgment be denied;

22          2. Defendant Woodford and Kanan's motion for summary judgment be denied;

23          3. Defendant Kernan's motion for summary judgment be granted; and

24          4. Dates for the submission of pretrial statements, pretrial conference and trial be

25  set if the district court adopts these findings and recommendations.

26  /////

1    These findings and recommendations are submitted to the United States District

2    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3    days after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6    shall be served and filed within ten days after service of the objections.  The parties are advised

7    that failure to file objections within the specified time may waive the right to appeal the District

8    Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9    DATED:  February 13, 2008.

10

11   _____

12   U.S. MAGISTRATE JUDGE

13

14

15

16   2/vall0310.157

17

18

19

20

21

22

23

24

25

26